2015 PA Super 258

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK COLEMAN, | |
| Appellant | No. 1839 WDA 2014 |

Appeal from the Judgment of Sentence June 3, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004456-2013

BEFORE: BOWES, OLSON, AND STABILE, JJ.

OPINION BY BOWES, J.: **FILED DECEMBER 14, 2015**

Mark Coleman appeals from the judgment of sentence of five to ten years incarceration to be followed by five years probation after a jury found him guilty of two counts of possession with intent to deliver ("PWID"), and one count each of possession of a controlled substance and possession of drug paraphernalia. After careful review, we reverse.

On December 17, 2012, State Parole Agent Thomas Pekar received an anonymous telephone call from a woman claiming that Appellant was one of the largest drug sellers in the West View, Allegheny County area and had received a driving under suspension citation. One of the conditions of Appellant's parole was that he report any contact with police to his parole officer. Agent Pekar confirmed that Appellant had received a citation for

driving with a suspended license. Appellant had not informed his parole officer of that citation.

Previously, Appellant had contacted a prior parole agent to change his address. Appellant provided that he was going to reside at 102 Center Avenue, West View, Pennsylvania. He completed Pennsylvania Board of Probation and Parole Form 348 on November 19, 2012, acknowledging that he would be living at the 102 Center Avenue address. Appellant's parole officer, Agent Pekar, had attempted on approximately three occasions to meet with Appellant at his address. On one occasion, Appellant agreed to meet with Agent Pekar but never appeared at the address.

In light of these facts, agents met with Appellant at the parole office and searched him on December 18, 2012. That search revealed nothing and Agent Timothy Wolfe told Appellant that he had information that he was involved in drug activity and was going to search his apartment. Agent Pekar and Agent William McKay traveled to Appellant's residence while Appellant remained at the parole office. The agents retrieved a key from the rental office manager, whose office was located next door to Appellant's apartment. After entering the apartment, the agents observed a digital scale in plain view that had white powder on it. The apartment also had a trash bag in the living room area and a Comcast cable bill addressed to Appellant at the address. The apartment was leased in Appellant's

grandmother's name. The trash bag contained a white substance that appeared to be cocaine.

The agents seized the suspected cocaine and scale and contacted a City of Pittsburgh police officer. That officer field tested the suspected narcotic, which tested positive as cocaine. Since Appellant's residence was not within Pittsburgh city limits, the parole agents alerted Allegheny County police. Allegheny County Detective Todd Naylor charged Appellant with the aforementioned crimes.

Appellant filed and litigated a motion to suppress, contending that the warrantless search was unconstitutional. The court denied that motion and the matter proceeded to trial. After his initial trial resulted in a hung jury, a subsequent jury found Appellant guilty of PWID, possession of cocaine, and possession of drug paraphernalia. The court sentenced Appellant to five to ten years incarceration to be followed by five years probation. This timely appeal ensued. The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Rule 1925(a) decision. The matter is now ready for this Court's consideration. Appellant presents two issues for our review.

> I. Did the trial court err when it denied Mr. Coleman's motion to suppress because the parole officers' warrantless search of 102 Center Avenue was unreasonable and unsupported by the requisite reasonable suspicion to believe that criminal activity was afoot, thus violating Mr. Coleman's

rights under the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution?

II. Was the evidence insufficient to prove, beyond a reasonable doubt, that Mr. Coleman committed any of the offenses at CC 2013-04456 because the Commonwealth failed to establish that Mr. Coleman possessed the cocaine and paraphernalia, and could not place Mr. Coleman inside the apartment?

Appellant's brief at 6.

Since a sufficiency claim warrants automatic discharge rather than retrial, we address that issue at the outset. In performing a sufficiency review, we consider all of the evidence admitted, even improperly admitted evidence. *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We view the evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. *Id*.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Id*. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. *Id*. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. *Id*. This Court

does not "re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id.* Determining whether a person possessed a drug with an intent to deliver is based upon the totality of circumstances. *Commonwealth v. Ratsamy*, 934 A.2d 1233 (Pa. 2007). Necessarily, if a person possesses narcotics with intent to deliver, he is guilty of possession.

Appellant argues that the Commonwealth failed to prove that he constructively possessed the cocaine inside 102 Center Avenue. He maintains that there is no evidence that he actually was inside the address nor did anyone observe him in possession of or selling the drug. Appellant asserts that the evidence establishes at most that he resided at the address at one time.

The Commonwealth responds that the circumstantial evidence in this matter proved beyond a reasonable doubt that Appellant constructively possessed the cocaine and digital scale. It notes that Appellant had informed his parole agent that he lived at 102 Center Avenue and that a Comcast bill dated December 3, 2012, was inside the apartment on top of the garbage bag containing the drugs. In addition, there is no dispute that over 100 grams of cocaine was located inside the apartment.

Constructive possession is determined by examining the totality of the circumstances. We look to whether the defendant had the ability to exercise a conscious dominion over the item, the defendant's power of control over the item, and his intent to exercise such control. *Commonwealth v.*

***Johnson***, 26 A.3d 1078, 1086 (Pa.Super. 2011).  Here, Appellant informed his parole agent that he lived at the address.  Further, a bill addressed to him at the apartment from two weeks earlier was inside.  Appellant's grandmother's name was on the lease, but there was no indication that she lived there.  Men's clothing was located inside the apartment.  The circumstantial evidence was more than sufficient to establish Appellant used or lived inside the apartment and therefore constructively possessed the drugs and scale.  In addition, the Commonwealth elicited expert testimony that based on the amount of drugs that Appellant possessed those drugs with intent to deliver.  Appellant's sufficiency claim is devoid of merit.

Having determined that the evidence in this matter was sufficient to find Appellant guilty of the pertinent charges, we now consider his suppression claim.  In evaluating a court order denying a suppression motion, we consider the factual findings of the suppression court and whether they are supported by record evidence.  ***In re T.B.***, 11 A.3d 500, 505 (Pa.Super. 2010).  We consider only the evidence of the Commonwealth's witnesses and testimony of the defendant's witnesses that are not contradicted by the suppression record.  ***Id***.[1]  Where the evidence

---

[1] As pointed out by Appellant, the Commonwealth relies on a since overruled standard for reviewing suppression claims, asserting, incorrectly, that this Court considers trial testimony in addition to suppression evidence in evaluating a suppression ruling.  Commonwealth's brief at 4-5 (citing
*(Footnote Continued Next Page)*

supports the suppression court's factual findings, we are bound by them and will reverse only where the legal conclusions derived from those facts are in error. *Id*. In this latter regard, we are not bound by the legal determinations of the suppression court.

Appellant acknowledges that, as a parolee, under both statutory authority and case law, he has less constitutional search and seizure protections than the regular citizen. However, he correctly asserts that parolees still have limited constitutional protections relative to warrantless searches. Parole officers may perform a search of a parolee's residence where the totality of the circumstances demonstrates reasonable suspicion that evidence of contraband or a violation of parole will be discovered. 61 Pa.C.S. § 6153.

Appellant maintains that the parole officers herein lacked reasonable suspicion to search his apartment. He contends that the search was based "on an unreliable, uncorroborated, anonymous tip received by Agent Pekar on December 17, 2012." Appellant's brief at 24. Appellant submits that the anonymous caller did not indicate that she saw Appellant in possession of drugs or selling drugs and only stated that he was a large drug dealer in the

*(Footnote Continued)* ─────────────

**Commonwealth v. Charleston**, 16 A.3d 505 (Pa.Super. 2011), and **Commonwealth v. Caban**, 60 A.3d 120 (Pa.Super. 2012)); **compare In re L.J.** 70 A.3d 1073 (Pa. 2013) (prospectively holding that an appellate court reviews the suppression evidence and does not also consider trial evidence in determining the correctness of a suppression court ruling).

area.  In addition, Appellant argues that, although Agent Pekar confirmed that the anonymous caller was correct that Appellant had been cited for driving with a suspended license, this fact does not render the caller reliable. In support, Appellant relies on *Alabama v. White*, 496 U.S. 325 (1990), *Commonwealth v. Goodwin*, 750 A.2d 795 (Pa. 2000) (OAJC), and *Commonwealth v. Wimbush*, 750 A.2d 807 (Pa. 2000).

In *White*, a police officer received an anonymous tip via a telephone call informing him that Vanessa White would be leaving a specific apartment at a specified time.  The tipster also provided that White would be driving a brown Plymouth station wagon with a broken right taillight.  In addition, the tipster told police that White would travel to a specific motel and was in possession of an ounce of cocaine inside a brown attaché case.

Armed with this highly specific information, police traveled to the apartment complex.  Once there, police observed a Plymouth station wagon with a broken right taillight in the parking lot in front of the apartment identified by the tipster.  The police then witnessed White exit the apartment and enter the vehicle.  She was not carrying anything.  Police followed White, who was driving on the route that would have taken her to the identified motel.  Just prior to reaching the motel, police effectuated a traffic stop.  Police told White that they stopped her because they suspected her of transporting cocaine in her car.  White permitted police to search her car and they found a locked brown attache case.  Police asked for the combination to

that case and White provided it. Inside police found marijuana. Thereafter, while processing White, they found cocaine in her purse.

The **White** Court set forth, "[a]lthough it is a close case, we conclude that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car." **White**, **supra** at 332. Appellant maintains that in this matter there was no independent corroboration by his parole officers of the tipster's information.

In **Goodwin**, **supra**, Pennsylvania State Police received an anonymous tip regarding Goodwin. The caller asserted that the girlfriend of David Klink had sold drugs to Klink's minor son. The trooper who took the call had arrested that juvenile on drug charges. Indeed, he had bought drugs from the minor while undercover. The officer also knew that Goodwin was David Klink's girlfriend and that the pair resided together. The tipster also indicated that the woman sold drugs from her home and workplace. According to the caller, the woman carried a quarter pound of marijuana in a pink bag, drove a blue Mustang, and took an hour lunch break, usually starting at 12:15 p.m. The caller provided the license plate number of the car and described Goodwin as a red-haired woman, approximately twenty-five years of age, and wearing a red coat and red stockings on that day.

The tipster also told police of the name and address of Goodwin's employer, where Goodwin lived, the location of the parking garage where

Goodwin would park, and the route she took to walk to the parking garage. State police then watched the parking garage identified by the tipster. At approximately 12:10 p.m., Goodwin exited her workplace carrying a pink bag. She matched the physical description provided by the caller and walked to her car via the route described by the tipster. Goodwin entered the vehicle and began to drive. Police pulled her over and informed her that they believed she was transporting marijuana. Goodwin signed a consent form and permitted police to search her car. After Goodwin removed her pink bag from the car, an officer told her that they were going to search the bag since it was inside the vehicle. At that point, Goodwin acknowledged that there were drugs in the bag. Police then asked to search her apartment that she shared with David Klink. Goodwin consented and additional marijuana and drug paraphernalia were found in her bedroom.

The Pennsylvania Supreme Court was divided over the lawfulness of the initial stop. Justice Nigro penned the lead opinion and was joined by Justice Cappy. The lead opinion opined that police saw no unusual activity while watching Goodwin and that **White**, **supra**, was not analogous because the tip in **Goodwin** "did not predict behavior that showed a familiarity with Goodwin's personal affairs." **Goodwin**, **supra** at 355. Accordingly, Justices Nigro and Cappy held that the stop violated the Fourth Amendment. Justice Zappala, joined by Chief Justice Flaherty, however, concluded that under **White**, the Fourth Amendment was not violated. Nonetheless, they

reasoned that the stop violated Goodwin's right against illegal searches and seizures codified by Article I, § 8 of the Pennsylvania Constitution. Justice Castille, joined by Justice Newman, dissented, finding that **White** controlled and that Article I, § 8 did not provide greater protections than did the Fourth Amendment.

**Wimbush**, **supra**, was decided on the same day as **Goodwin**, and involved two consolidated cases: that of Anthony Wimbush and Lance White. In Wimbush's case, Pennsylvania State Police received an anonymous tip regarding a black man named Tony. The tipster set forth that Tony would be driving a white van on Piney Ridge Road and would have cocaine and marijuana. The caller provided the license plate number of the van and police learned that the van was registered to the defendant, Anthony Wimbush. The police went to Piney Ridge Road in multiple cars. One officer saw the van parked outside a trailer. After Wimbush began driving, police stopped him. Upon approaching the vehicle, an officer observed two baggies on the floor of the van. One bag appeared to contain marijuana and the other cocaine. Police immediately seized the drugs. Wimbush later signed a consent to search his van and additional drugs were found.

In White's matter, New Kensington police received an anonymous 911 call about potential drug activity at a public housing complex. The caller claimed that a black man wearing a white shirt and white shorts and carrying drugs was leaving the complex on a girl's black bicycle. The officer

who received the tip drove to the housing complex and saw the girl's black bicycle. She then saw White, who was dressed in a white shirt and white shorts, exit the complex and ride away on the bike. The officer stopped White, and as she began to pat him down, he fled. Another officer was able to stop White, who dropped sixteen bags of crack cocaine.

Justice Nigro penned the majority opinion, finding the stop illegal. He was joined by Justice Cappy and Justice Saylor, the latter of whom had not taken part in the **Goodwin** case. Chief Justice Flaherty also joined in full, but offered a concurring opinion on the question of whether the defendants had preserved their Article I, § 8 challenge as contradistinguished from their Fourth Amendment claim. Justice Zappala wrote a solo dissent and Justice Castille authored a dissent joined by Justice Newman. Justice Castille opined that **White** controlled, the defendants had not preserved a Pennsylvania constitutional claim, and even if they had, the Pennsylvania Constitution offered the same protections as the federal charter. Justice Zappala agreed with Justice Castille that **White** was binding on the Fourth Amendment issue and that the defendants had waived their Pennsylvania constitutional argument, but did not agree that the two constitutions provided the same protections. The majority distinguished **White** and concluded that the tips were not sufficiently reliable to create reasonable suspicion for the vehicular stops.

Appellant proffers that the aforementioned cases support his claim that the parole officers in this matter did not sufficiently corroborate the anonymous tip and that their search of his apartment was unlawful. The Commonwealth counters that, because Appellant failed to inform his parole officer of his citation for driving with a suspended license and did not appear at his residence to meet with parole agent on another occasion, his parole officer was permitted to conduct a compliance check of his residence. It continues that, based on the totality of the circumstances, the parole agents had reasonable suspicion to search his address. The Commonwealth highlights that the agents confirmed that Appellant had been cited for driving with a suspended license. Additionally, the Commonwealth maintains that Appellant's repeated failure to meet with his parole agent to confirm his address aroused suspicion. Thus, it contends that the agents had lawful authority to enter Appellant's apartment.

The Commonwealth adds that, once the agents were inside the apartment, they observed a digital scale with white powder in plain view and a box of sandwich baggies in the living room. This information, according to the Commonwealth, was sufficient to permit them to look inside the garbage bag in the living room to determine if Appellant had contraband or evidence of other violations of his parole.

The Fourth Amendment, which applies to the States via the Fourteenth Amendment, provides that

> The right of the people to be secure in their persons, houses, papers, and effect, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S.Const. Am. IV. Similarly, Article I, § 8 of the Pennsylvania Constitution sets forth,

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa.Const. Art. I, § 8.

A parolee has limited Fourth Amendment rights because of a diminished expectation of privacy. *Commonwealth v. Williams*, 692 A.2d 1031, 1035 (Pa. 1997). A "parolee's signing of a parole agreement giving his parole officer permission to conduct a warrantless search does not mean either that the parole officer can conduct a search at any time and for any reason or that the parolee relinquishes his Fourth Amendment right to be free from unreasonable searches." *Id*. at 1036.

As mentioned, state parole agents are statutorily permitted to perform a search of a parolee's residence based on reasonable suspicion that "the real property or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S. § 6153(d)(2). Here, the initial

- 14 -

question is whether, under the totality of the circumstances, Appellant's parole agents had reasonable suspicion to enter his apartment without a search warrant.

The suppression court relied on **Commonwealth v. Smith**, 85 A.3d 530 (Pa.Super. 2014).[2]  Therein, Smith was released on parole from a drug related sentence.  Smith acknowledged and signed a form that authorized parole agents to search his person and property without a warrant if they had reasonable suspicion of criminal activity.  In addition, because Smith was residing with his girlfriend, she also signed an agreement that consented to searches based on reasonable suspicion and without a warrant as well as unannounced home visits.  Smith's residence was scheduled for a routine home visit on December 21, 2011.  Smith's parole agent also received an anonymous telephone call asserting that Smith was selling marijuana near where Smith lived.

Parole agents traveled to Smith and his girlfriend's home on December 21, 2011.  Both Smith and his girlfriend were present and allowed the agents into the residence.  Upon entering, the agents immediately detected a strong odor of marijuana coming from the basement.  The odor became stronger after opening the basement door.  A large amount of marijuana

_____

[2] The Commonwealth does not rely on or discuss **Smith** in its brief.

- 15 -

was discovered under the basement steps, along with money, a scale, and unused baggies.

This Court ruled that the parole agents conducted an unannounced home visit and were permitted into the residence, which did not amount to a search. *Smith*, *supra* at 537 ("We conclude that the state parole agent's actions in walking through Appellant's residence did not constitute a search."). It held that the agents were not required to have reasonable suspicion to enter the premises. Rather, the agents were lawfully present in the home when they detected the odor of marijuana, which then provided reasonable suspicion for a search. *Id*. ("During this lawful visit, Agent Peterson smelled marijuana emanating from Appellant's basement, and at that juncture, he developed the requisite reasonable suspicion to conduct a search for the marijuana.").

Although an anonymous telephone call was recited in the facts of the *Smith* case, the Court was not faced with a determination as to whether parole agents had reasonable suspicion to conduct a warrantless entry and search based on that anonymous call. Here, parole agents did not gain entry via permission from Appellant or another resident. Rather, they entered the apartment without consent. The agents herein were not conducting a scheduled or routine home visit, as they knew Appellant was not home, and they intended to search the home for drug contraband. *See Smith*, *supra* (Fitzgerald, J., concurring) ("to the extent that the trial court

- 16 -

found that the agents were investigating information of 'some kind of drug sales,' I would conclude that the agents conducted a search without reasonable suspicion"). While parole agents have statutory authority to enter a parolee's premises without a warrant to search for contraband, they must have reasonable suspicion of criminal activity. Parole agents cannot escape the statutory requirements for a warrantless entry based on merely renaming it a compliance check; otherwise, agents could freely enter a parolee's residence without a warrant at any time even without reasonable suspicion of criminal activity.

Unlike **Smith**, Appellant was not present and did not allow the agents to enter. Therefore, the lawful grounds for the presence of the agents inside the residence therein is distinct from the present case. Simply stated, this is not a case where the agents lawfully entered with the consent of the resident. Thus, whereas the agents in **Smith** did not need reasonable suspicion to enter the residence in the first instance, that is the important inquiry here. As **Smith** did not address whether parole agents had reasonable suspicion to enter a parolee's premises based on an anonymous tip, it is not controlling.

Furthermore, we find that the anonymous tip in this matter falls short of the information provided and confirmed in the **Wimbush** case and its companion case. Indeed, the United States Supreme Court in **White**, **supra**, called that case close and, in that matter, the information relied on

by law enforcement was of greater quality and quantity and was confirmed in most of its aspects. Here, Appellant's parole agent received a bare bones assertion that Appellant was selling drugs and that he had been cited for driving with a suspended license. Admittedly, Appellant's parole agent confirmed that a citation for the driving violation had been issued, but this is far less corroboration than occurred in **Wimbush** and in the plurality **Goodwin** case. In addition, that fact did not need to be further corroborated by searching Appellant's residence.

We acknowledge that parole agents are not police officers and do not have the same ability to conduct surveillance or confirm information received by a tipster. Nonetheless, the search and seizure statute relative to parole agents expressly states that "[t]he existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision." 61 Pa.C.S. § 6153(b)(6). In this respect, in order for an anonymous tip to give rise to reasonable suspicion of criminal activity, it must be of sufficient quality that it may be found reliable.

The anonymous tip in this matter cannot be considered reliable based on our Supreme Court's holding in **Wimbush** and the plurality decision in **Goodwin**. In both cases, police were given significantly more detailed information that they were able to corroborate, but our High Court still declined to find the anonymous tip reliable enough to arise to reasonable

suspicion for a warrantless seizure and search. Moreover, the fact that Appellant and his parole agent had not personally met for a compliance check of his residence does not, in combination with the unreliable tip, rise to the level of reasonable suspicion to search that home. Parole agents did not have specific and articulable facts that Appellant was engaged in criminal activity. *See In re J.E.*, 907 A.2d 1114 (Pa.Super. 2006) (probation officer lacked reasonable suspicion to conduct warrantless pat-down absent specific and articulable facts suggesting a tip was reliable); *compare Williams*, *supra* (parole officer corroborated tip from a confidential informant with local police regarding the parolee's dealing of drugs). Accordingly, the warrantless entry into Appellant's apartment violated his Fourth Amendment and Article I, § 8 rights.

Judgment of sentence reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2015