J-S36015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARY DEAN CAMPBELL | : | |
| | : | |
| Appellant | : | No. 2076 MDA 2018 |

Appeal from the Judgment of Sentence Entered July 12, 2018
In the Court of Common Pleas of Bradford County
Criminal Division at No(s):  CP-08-CR-0000831-2017

BEFORE:   PANELLA, P.J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:          **FILED OCTOBER 29, 2019**

Gary Dean Campbell appeals from the judgment of sentence entered after a jury convicted him of one count of deceptive or fraudulent business practices, *see* 18 Pa.C.S.A. § 4107(a)(8), and one count of theft by deception, *see* 18 Pa.C.S.A. § 3922(a)(1).[1]  The trial court sentenced Campbell to a term of incarceration of nine months to twenty-three months and twenty-nine days, which is to be followed by twenty-four months of probation.  We affirm.[2]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] A second case, **Commonwealth v. Campbell**, CP-08-CR-0000832-2017, was joined with this matter for trial. That case charged Campbell with the same crimes as those enumerated above, but named a different victim. Campbell was found not guilty by a jury on all charges at CP-08-CR-0000832-2017.

[2] The trial court fashioned Campbell's judgment of sentence on July 12, 2018. On Monday, July 23, 2018, Campbell filed a timely post-sentence motion,

Campbell sought investors for a natural gas enterprise he and Suzie Gill established, attempting to profit on the recent interest and development surrounding the Marcellus Shale in Bradford County. The stated intention of their business was to lease equipment and then re-lease it. To this end, Campbell and Gill formed a Pennsylvania LLC under the name Drilling Resources, LLC. Gill then executed an operating agreement for the company.[3]

_____

giving the trial court 120 days to decide his motion. Because the trial court did not grant a thirty-day extension of time, *see* Pa.R.A.P. 720(B)(3)(b), the 120th day for its decision on this motion was November 20, 2018.

Here, the trial court did not issue a decision on the motion before November 20, 2018. Therefore, the motion was denied by operation of law. *See* Pa.R.Crim.P. 720(B)(3)(a). If the denial by operation of law occurs, the clerk of courts is supposed to enter an order on behalf of the court establishing the denial and serve copies on the parties. *See* Pa.R.Crim.P. 720(B)(3)(c). When a post-trial motion is denied by operation of law, a notice of appeal must then be filed within thirty days of the entry of the order denying that motion. *See* Pa.R.Crim.P. 720(A)(2)(b).

On December 20, 2018, the trial court purported to enter an order denying Campbell's post-sentence motion. Immediately thereafter, Campbell filed a notice of appeal. However, the clerk of courts never entered an order deeming the motion denied by operation of law. Accordingly, when the trial court ruled on Campbell's motion on December 20, 2018, and stated that Campbell had the right to appeal within thirty days of that ruling, it was doing so well outside of the mandatory 120-day period. Even though there has been a breakdown in court operations that could have excused an untimely filing of the notice of appeal, *see Commonwealth v. Patterson*, 940 A.2d 493, 498-99 (Pa. Super. 2007) (citation omitted), Campbell's notice of appeal is technically timely in any event, as December 20 is exactly thirty days after November 20. *See* Pa.R.Crim.P. 720(A)(2)(b).

[3] Although her name was on the company and she was the signator on company-related material, Gill's level of involvement in Drilling Resources, LLC, appears to be minimal. The trial court indicates that she did not invest

Campbell first met with Dr. Stephen Renzi. After providing Renzi with information about Drilling Resources, LLC, Campbell convinced Renzi to invest twenty thousand dollars in the company. Campbell provided Renzi with a certificate of ownership and a business summary, identifying Drilling Resources's daily revenues extending well into five digits.

Approximately three months later, Campbell indicated to Renzi that he needed more investors. In response, Renzi gave Campbell Matthew McClellan's telephone number. McClellan is Renzi's neighbor and farms land he leases from Renzi. More importantly, McClellan is the victim of the crimes at issue in this appeal.

One month later, Campbell contacted McClellan. Campbell pitched the company to McClellan, stating that the company was growing and receiving eighteen to thirty thousand dollars in revenue a day. Campbell provided McClellan with a business plan of the company.[4] McClellan then wrote out a check for twenty thousand dollars, made payable to Gill. Although Campbell articulated to McClellan that he would receive monthly financial reports and that he would see at least some returns on his investment within months,

_____

any funds in the operation and was not aware if Campbell had paid the costs of the LLC formation. Further, Gill came across a falsified purchase order and questioned Campbell about it. Campbell admitted the purchase order's falsity and explained that other companies manipulate their numbers to look better. *See* Trial Court Opinion, 02/08/19, at 4

[4] The business plan mentioned an employee no longer employed by the company, having left due to apparent financial constraints. Therefore, at the time this business plan was provided, the total number of additional employees of Drilling Resources, LLC, was down to one.

McClellan never received any of this information following his buy-in and additionally never received any returns. Moreover, unbeknownst to McClellan, the company had been unable to pay employees for at least four months prior to Campbell's interactions with McClellan.

Two to three months after receiving McClellan's investment money, Campbell left Pennsylvania to work in Texas. The only subsequent contact McClellan had with Campbell, through no fault of McClellan, was a voicemail from Campbell stating that he was in Colorado and that McClellan should start to see a return on his investment in the near future. McClellan never received any money from his investment. Campbell did, however, communicate to Renzi, maintaining that a company customer went bankrupt, and therefore, the company had no revenue.

At trial, Campbell, representing himself, asserted that the transaction at issue was a non-guaranteed investment opportunity, which given its speculative nature, was subject to fail at any point. In spite of Campbell's contention, a jury found him guilty of fraudulent or deceptive business practices and theft by deception. **See** Trial Court Opinion, 02/08/19, at 3-6.

Campbell raises two questions for our review, both dealing with sufficiency of the evidence issues:

> 1) Was the evidence adduced at trial sufficient to establish guilt beyond a reasonable doubt with regard to [f]raudulent [b]usiness [p]ractices?

2) Was the evidence adduced at trial sufficient to establish guilt beyond a reasonable doubt with regard to [t]heft by [d]eception?

Appellant's Brief, at 5.

Our standard of review for challenges to the sufficiency of the evidence is well settled:

> Whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Eichler*, 133 A.3d 775, 787 (Pa. Super. 2016) (brackets and citation omitted). "The fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Coleman*, 130 A.3d 38, 41 (Pa. Super. 2015) (citation omitted). In addition, "[w]hether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Tejada*, 107 A.3d 788, 792 (Pa. Super. 2015) (citation omitted).

Campbell was convicted of both deceptive or fraudulent business practices and theft by deception. In relevant part, the Pennsylvania Crimes

Code defines deceptive or fraudulent businesses practices as the situation where a person, in the course of business,

> makes or induces others to rely on a false or misleading material statement to induce an investor to invest in a business venture. The offense is complete when any false or misleading material statement is communicated to an investor regardless of whether any investment is made. For purposes of grading, the "amount involved" is the amount or value of the investment solicited or paid, whichever is greater. As used in this paragraph, the following words and phrases shall mean: "Amount" as used in the definition of "material statement" includes currency values and comparative expressions of value, including, but not limited to, percentages or multiples. "Business venture" means any venture represented to an investor as one where he may receive compensation either from the sale of a product, from the investment of other investors or from any other commercial enterprise. "Compensation" means anything of value received or to be received by an investor. "Invest" means to pay, give or lend money, property, service or other thing of value for the opportunity to receive compensation. The term also includes payment for the purchase of a product. "Investment" means the money, property, service or other thing of value paid or given, or to be paid or given, for the opportunity to receive compensation. "Investor" means any natural person, partnership, corporation, limited liability company, business trust, other association, government entity, estate, trust, foundation or other entity solicited to invest in a business venture, regardless of whether any investment is made. "Material statement" means a statement about any matter which could affect an investor's decision to invest in a business venture, including, but not limited to, statements about:
>
> > (i) the existence, value, availability or marketability of a product;
> > (ii) the number of former or current investors, the amount of their investments or the amount of their former or current compensation;
> > (iii) the available pool or number of prospective investors, including those who have not yet been solicited and those who already have been solicited but have not yet made an investment;
> > (iv) representations of future compensation to be received by investors or prospective investors; or

> > (v) the source of former, current or future compensation paid or to be paid to investors or prospective investors.

18 Pa.C.S.A. § 4107(a)(8) (some subsection headings omitted).

> A person is guilty of theft by deception if

> he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

> > creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise[.]

18 Pa.C.S.A. § 3922(a) (subsection headings omitted).

The gravamen of Campbell's argument is that Drilling Resources, LLC, given its "start-up" nature, needed money from investors. Campbell provided McClellan with both an operating and purchase agreement. McClellan was aware that Renzi had his attorney review those documents before Renzi invested. Further, the purchase agreement explicitly disclaimed all warranties outside of those enumerated in the agreement and indicated that it is the entire understanding of the parties. Accordingly, Campbell avers that he has not been fraudulent or deceptive in his actions, but was instead engaging, at most, in mere puffery. *See* Appellant's Brief, at 13-15.[5]

---

[5] We also observe that Campbell's argument section violates several Rules of Appellate Procedure. For example, Campbell sets forth four questions for our review, *see* Appellant's Brief, at 5, but he does not divide his argument "into as many parts as there are questions to be argued," in violation of Pa.R.A.P.

"Where the impression created by the statement is one of exaggeration or overstatement expressed in broad language, it may be deemed non-actionable puffery." *Commonwealth v. Golden Gate National Senior Care, LLC*, 194 A.3d 1010, 1023 (Pa. 2018). Puffery has been broken down into two basic categories: 1) hyperbolic boasting or bluster that no reasonable consumer would believe to be true; and 2) claims of superiority over a competitor's product. *See id*. "A salient characteristic of statements deemed to be 'puffery' is that consumers understand that the statements *are not to be taken literally*." *Id*. (emphasis added).

The trial court concluded the evidence at trial supported findings that: 1) Campbell misled McClellan as to the company's profitability and expected return on investment; 2) Campbell promised that McClellan would see returns on his investment shortly after placing money into the operation; 3) Campbell conveyed that the company was receiving well into the five figures worth of revenue each day; 4) the business plan Campbell provided to McClellan featured an employee that was no longer there; 5) Campbell immediately cashed McClellan's money but failed to adequately communicate with McClellan after the money was provided and, in violation of what was told to

---

2119(a). Instead, he merely has one omnibus argument section inclusive of all issues. In addition, although he is arguing that the evidence was insufficient to find him guilty of his two crimes, Campbell's brief does not contain a single citation to the record in violation of Pa.R.A.P. 2119(c).

McClellan, never provided monthly financials apprising him of the operations. **See** Trial Court Opinion, 02/08/19, at 6. After an independent review of the record, we agree with the trial court.

Drilling Resources, LLC, struggled to meet payroll, at a minimum, four months prior to McClellan's investment in the company. **See** N.T., 05/22/18, at 123. Attempting to keep his scheme alive, Campbell materially misinformed McClellan in a way that cannot be described as puffery, and McClellan relied on that information to make his investment decision. **See, e.g**., **id.**, at 174-176. To be labeled as puffery, Campbell's language to McClellan would have had to have been broad and immaterial remarks that no reasonable person would take as factual. Instead, Campbell espoused purported factual representations about the company and created a false impression about the company's health and financial stability in order to obtain McClellan's investment money. **See e.g.**, **id**., at 175 (Campbell asserting to McClellan that the company was generating eighteen to thirty thousand dollars a day).

Further, the business plan provided to McClellan was replete with inaccuracies that were not addressed nor discussed. **See e.g.**, **id.**, at 225-32, 238-40 (Campbell stating that he provided McClellan with a business plan that included an employee no longer at the company and that the contract between them was sufficient to indicate McClellan was accurately apprised of the company's details). Excepting one phone call that did nothing to assuage

McClellan's concerns or provide him with the monthly financial statements he was promised, Campbell simply cashed McClellan's check, failed to apprise McClellan as to the continuing health of the company, and provided absolutely no return on McClellan's investment. *See id*., at 180-182.

As stated above, the fact-finder was free to believe all, part, or none of the evidence presented. *See Coleman*, 130 A.3d at 41. With the jury free to make those factual determinations, it adjudicated him guilty, and the record clearly demonstrates that Campbell made "false or misleading material statement[s] [that were] communicated to an investor," 18 Pa.C.S.A. § 4107(a)(8), and "intentionally obtain[ed] … property of another" by "creat[ing] or reinforce[ing] a false impression, including false impressions as to … value." 18 Pa.C.S.A. § 3922(a)(a).

As such, we determine that the trial court did not commit an error of law. In doing so, we find there to have been sufficient evidence to convict Campbell on both crimes and affirm his judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/29/2019

- 10 -