J-A18017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KERMIT ROBINSON :
:
Appellant : No. 1025 WDA 2023

Appeal from the Judgment of Sentence Entered August 3, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006255-2022

BEFORE: OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.: **FILED: SEPTEMBER 24, 2024**

Kermit Robinson (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of one count each of persons not to possess firearms and possession of drug paraphernalia, and four counts each of possession with the intent to deliver a controlled substance and possession of a controlled substance.[1] We affirm.

On September 22, 2023, the Commonwealth filed a criminal information charging Appellant with the above offenses. The charges arose from a search of Appellant's residence conducted on July 14, 2022, by Parole Agent Mark Graulty (Agent Graulty) and the Mount Oliver Police Department. Law

---

[1] **See** 18 Pa.C.S.A. § 6105(a)(1); 35 P.S. §§ 780-113(a)(32), (30), (16), respectively.

enforcement recovered a loaded firearm and large quantities of suspected heroin and cocaine from Appellant's residence.

On May 21, 2023, Appellant filed a motion to suppress evidence and statements. Therein, Appellant challenged the legality of law enforcement's search of his residence and subsequent interrogation. *See* Motion to Suppress, 5/21/23, at 4-5 (unpaginated). On June 29, 2023, the trial court held an evidentiary hearing on Appellant's suppression motion. The Commonwealth presented testimony from Officer Ryan Lawrence (Officer Lawrence), and Agent Graulty. Appellant presented testimony from his wife, Lisa Gittings (Ms. Gittings). At the conclusion of the hearing, the trial court took the matter under advisement.

On August 3, 2023, the trial court denied Appellant's suppression motion. The trial court issued the following findings of fact:

> [I]n late June, early July of 2022, M[ount] Oliver police received reports of suspected drug activity near the 200 block of Ormsby Avenue[,] near where [Appellant] lives. The police also received reports of heavy foot traffic [at] 221 Ormsby Avenue[ (Appellant's residence or the residence)] in the late evening, early morning hours ….
>
> [] Agent Graulty[ ]was informed by the M[ount] Oliver police of the complaints they had received involving the residence, which was the residence of … [Appellant].[2]

---

[2] Agent Graulty further testified Officer Lawrence told him he had observed Appellant engage in a surveillance countermeasure to avoid "trash pulls" by discarding his garbage at a location other than his own residence. N.T., 6/29/23, at 25. Officer Lawrence testified that "trash pulls" are a common technique employed in narcotics investigations, whereby officers search
*(Footnote Continued Next Page)*

Thereafter[, Agent Graulty] initiated surveillance of the residence and observed an individual [exit] a maroon SUV and enter the residence[. This individual] stayed for a brief period of time, [and] exited[,] getting back in the SUV.

The next day, July 7th, [Appellant] reported to [the North Shore state] parole office[] for his visit[,] and upon leaving[,] was seen entering a maroon SUV. [Agent Graulty] authored a report memorializing what he had observed and the reasonable suspicion … that existed to search the residence [based on Appellant]'s status as a parolee. [Agent Graulty] also requested the assistance of the M[ount] Oliver police in that regard.

On July 14, 2022, [at] approximately 6:30 a.m.[, Agent Graulty] and nine other agents went to the residence and knocked, at which time [Ms. Gittings] answered the door[. T]he agents went inside and observed [Appellant] on the couch. They removed him from the residence, placing him in [a] M[ount] Oliver parole [officer's] car. Agents searched the couch and found [a] firearm and [] stamp bags of suspected heroin. [Agent Graulty] called 911 for officer assistance.

Approximately five to ten minutes later[,] the M[ount] Oliver [police] officers responded to the residence. [Officer] Lawrence[] read [Appellant] his ***Miranda***[3] [r]ights and told him the agents had discovered [contraband] in his home. [Appellant] consented to a search of the residence, which revealed narcotics, [and] indicia [of Appellant's residency].

N.T., 8/3/23, at 2-4 (footnotes added).

---

through refuse in order "to ascertain who lives [at a particular residence] or if there's any type of narcotics or drug paraphernalia consistent with drug sales in the area." ***Id.*** at 8.

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

Following Appellant's stipulated non-jury trial, the trial court[4] convicted Appellant of the above offenses, and the matter immediately proceeded to sentencing. The trial court sentenced Appellant to an aggregate three to six years in prison.[5] Appellant timely appealed. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant presents the following issue:

> I. Did the trial court err in denying the motion to suppress filed in this case because it was the result of an investigation into a parolee done without reasonable suspicion that criminal activity was afoot? Specifically, did the parole agent fail to corroborate the unsubstantiated anonymous tip of suspicious activity at [Appellant]'s home, resulting in an improper search of [A]ppellant's home?

Appellant's Brief at 6.[6]

---

[4] The Honorable Edward J. Borkowski presided over Appellant's suppression hearing and non-jury trial.

[5] The record is silent on merger of offenses; however, the trial court imposed no further penalty for Appellant's misdemeanor drug possession convictions.

[6] The trial court asserts Appellant waived his claim for failure to comply with Pa.R.A.P. 1925(b)'s conciseness requirement. **See** Trial Court Opinion, 2/7/24, at 10; **see also** Pa.R.A.P. 1925(b)(4)(iv) ("The Statement should not … provide lengthy explanations as to any error."). Indeed, Appellant's three-page, single-issue Rule 1925(b) statement needlessly argued the merits of the issue he identified in his concise statement. **See** Pa.R.A.P. 1925(b) Statement, 10/17/23, at 2-3 (unpaginated). Nevertheless, upon review, Appellant's Rule 1925(b) statement was not so vague or lengthy as to require the trial court "to guess what issues [A]ppellant is appealing[.]" **See Commonwealth v. Reeves**, 907 A.2d 1, 2 (Pa. Super. 2006) (*en banc*); **see also** Trial Court Opinion, 2/7/24, at 11-14 (trial court addressing the merits of Appellant's claim). Therefore, we decline to find Appellant waived his sole issue, as stated in his Pa.R.A.P. 2116 Statement of Questions Involved.
*(Footnote Continued Next Page)*

Appellant challenges the trial court's denial of his suppression motion.

Our standard of review

> is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. McMahon*, 280 A.3d 1069, 1071 (Pa. Super. 2022) (quoting *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017)).

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." *Commonwealth v. Rice*, 304 A.3d 1255, 1260 (Pa. Super. 2023) (citation omitted). "As a general rule, a warrant stating probable cause is required before a police officer may search for or

---

However, Appellant purports to challenge, as a sub-claim in the argument section of his brief, whether he voluntarily consented to the search of his residence. *See* Appellant's Brief at 37-44. Appellant did not preserve this issue in his Rule 1925(b) statement. Accordingly, it is waived. *See Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020) ("[A]ny issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review." (citing *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998)).

seize evidence." **Commonwealth v. Heidelberg**, 267 A.3d 492, 502 (Pa. Super. 2021) (*en banc*) (quotation marks and citation omitted).

However, "[a] parolee has limited Fourth Amendment rights because of a diminished expectation of privacy." **Commonwealth v. McClellan**, 178 A.3d 874, 881 (Pa. Super. 2018) (citing **Commonwealth v. Williams**, 692 A.2d 1031, 1035 (Pa. 1997)). Consequently, "[a] parole officer need not obtain a warrant based upon probable cause before conducting a search of a parolee." **Commonwealth v. Gould**, 187 A.3d 927, 935 (Pa. Super. 2018) (citation omitted).

The statute governing the supervisory relationship between parole officers and parolees provides, in relevant part, as follows:

> **(d) Grounds for personal search of a department-supervised offender.--**
>
> (1) A personal search of an offender may be conducted by an agent:
>
> > (i) if there is a reasonable suspicion to believe that the department-supervised offender possesses contraband or other evidence of violations of the conditions of supervision[.]
>
> \*\*\*
>
> (4) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:
>
> > (i) The observations of agents.
>
> > (ii) Information provided by others.

(iii) The activities of the department-supervised offender.

(iv) Information provided by the department-supervised offender.

(v) The experience of agents with the department-supervised offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the department-supervised offender.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S.A. § 6182(d).

We have recently reiterated the standards applicable to parolee searches:

> "[P]arolees agree to 'endure warrantless searches' based only on reasonable suspicion in exchange for their early release from prison." **Commonwealth v. Curry**, 900 A.2d 390, 394 (Pa. Super. 2006) (citation omitted). Thus, "agents need not have probable cause to search a parolee or his property; instead, reasonable suspicion is sufficient to authorize a search." **Id.** A search will be deemed reasonable "if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty." [] **Gould**, 187 A.3d [at] 935 [] (citation omitted). Parole officers may form reasonable suspicion based on personal observations, their history with the parolee, the parolee's behavior while on parole, **and third-party information**. **See Commonwealth v. Colon**, 31 A.3d 309, 314–16 (Pa. Super. 2011).

**Commonwealth v. Rosendary**, 313 A.3d 236, 247-48 (Pa. Super. 2024)

(emphasis in original).

"[T]he determination of whether reasonable suspicion exists is to be considered in light of the totality of the circumstances[.]" ***Commonwealth v. Sperber***, 177 A.3d 212, 215 (Pa. Super. 2017) (citation omitted). Pertinently, "[a] consideration [of] the totality of the circumstances includes such factors as tips, the reliability of any tips, location and suspicious activity." ***Commonwealth v. Muhammad***, 289 A.3d 1078, 1087 (Pa. Super. 2023). An anonymous tip, standing alone, "is insufficient to give rise to a reasonable suspicion that criminal activity is afoot. [T]he police need[] 'something more' than just [an] anonymous tip to" give rise to a reasonable suspicion of criminal activity. ***Commonwealth v. Goodwin***, 750 A.2d 795, 799 (Pa. 2000) (plurality); ***see also id.*** (concluding police lacked reasonable suspicion to search the defendant where they "saw no unusual activity while they watched [the defendant] and had no reason independent of the anonymous tip to suspect that criminal activity was afoot.").

Appellant argues that Agent Graulty "did not have reasonable suspicion in this case[,] because he relied upon vague, unreliable, anonymous reports that [did not] even allege that criminal activity [was] afoot." Appellant's Brief at 21. Appellant asserts Agent Graulty "relied on a hunch that 'foot traffic' equals 'drug sales' in [Appellant's] residence[,]" and, as a result, the evidence falls "far short of the specific articulable facts which should be discussed in connection to a finding of reasonable suspicion." ***Id.*** at 30. Appellant maintains that "[t]here is no corroboration of drug activity here." ***Id.*** at 35.

The Commonwealth responds that there was ample corroboration of the anonymous reports of drug activity in the vicinity of Appellant's residence. *See* Commonwealth's Brief at 17. The Commonwealth argues the surveillance countermeasure employed by Appellant (ostensibly to conceal items in his garbage should law enforcement conduct a "trash pull") was a significant factor in Agent Graulty's reasonable suspicion of a parole violation. ***See id.*** at 17-18. The Commonwealth argues Appellant's surveillance countermeasure,

> in conjunction with the fact that [Appellant] had been a drug dealer in the past, the claim that foot traffic was seen going in and out of his residence between certain hours, the information indicating that drug purchases had been taking place on his street, and the odd location where [Appellant] parked his vehicle—on two separate occasions—in relation to where he was going, surely provided a reasonable suspicion that evidence of contraband would be found in his residence such that [the trial court] did not err in concluding that the gun and drugs recovered as a result of the search of [Appellant's] residence should not be suppressed.

*Id.* at 18.

We observe that Appellant relies largely on the rationales stated in ***Commonwealth v. Wimbush***, 750 A.2d 807 (Pa. 2000), and ***Commonwealth v. Coleman***, 130 A.3d 38 (Pa. Super. 2015). We address each case in turn.

In ***Wimbush***, the Pennsylvania Supreme Court considered "whether an anonymous tip and other purported corroborating evidence created a reasonable suspicion that criminal activity was afoot…." ***Wimbush***, 750 A.2d

at 372.[7]   The consolidated appeal examined the cases of Anthony Wimbush (Wimbush) and Lance White (White), both of whom were charged with drug offenses following searches conducted by law enforcement after receiving anonymous tips.  *Id.* at 373-74.

In Wimbush's case, law enforcement received a tip "that a black man named Tony would be driving a white van on Piney Ridge Road and that Tony would have cocaine and marijuana in his possession."  *Id.* at 373.  The caller provided the van's license plate number, which officers learned was registered to Wimbush.  *Id.*   Officers located and surveilled the van, ultimately conducting a traffic stop and recovering illegal contraband.  *Id.*

In White's case, officers "responded to an anonymous 911 call about possible drug activity at [a] … public housing complex."  *Id.* at 374.  "The anonymous caller asserted that a black male, wearing a white shirt and white shorts, would exit the complex with drugs in his possession and get onto a girl's black bicycle."  *Id.*   An officer observed White (who matched the anonymous caller's description) get onto "a girl's black bicycle."  *Id.*   The officer detained White and frisked him for weapons.  *Id.*   White began to flee; however, he complied with the officer's commands to return.  *Id.*   As White

---

[7] Although **Wimbush** does not involve a parolee search, Section 6182(d)(4), *supra*, requires parolee searches to be "in accordance with constitutional search and seizure provisions as applied by judicial decision[,]" and that our analysis be "in accordance with such case law[.]"  61 Pa.C.S.A. § 6182(d)(4).

walked back to the officer, he discarded contraband, which the officer recovered. ***Id.***

The ***Wimbush*** Court concluded the anonymous tips in both cases carried no indicia of reliability. ***See id.*** at 812-13. Neither tip provided predictive, "inside information" demonstrating the callers' "intimate familiarity" with the defendants' respective affairs. ***Id.*** As the anonymous tips in both cases conveyed only general, conclusory information, **and because law enforcement failed to corroborate those tips**, they were insufficient to establish reasonable suspicion of criminal activity. ***See id.*** at 813.

In ***Coleman***, this Court addressed whether a parole agent possessed reasonable suspicion justifying a search of Mark Coleman's (Coleman) residence after receiving an anonymous tip that Coleman "was one of the largest drug sellers" in the area, and had "received a driving under suspension citation." ***Coleman***, 130 A.3d at 40. The parole agent attempted to meet with Coleman at his residence on approximately three occasions, but Coleman never appeared. ***See id.*** After confirming that police had cited Coleman for driving under a suspended license, the agent arranged for Coleman to meet him at the parole office. ***See id.*** Once there, agents detained Coleman and traveled to his residence to conduct a search, whereupon they found illegal contraband. ***See id.***

The **Coleman** Court concluded "the anonymous tip in this matter falls short of the information provided and confirmed in the **Wimbush** case[.]" **Id.** at 46. We recognized the limitations on parole agents' ability "to conduct surveillance or confirm information received by a tipster." **Id.** at 47. Nevertheless, we required that a parole agent's "reasonable suspicion to search [] be determined in accordance with constitutional search and seizure provisions as applied by judicial decision." **Id.** (internal brackets, quotation marks, and citation omitted). We continued:

> The anonymous tip in this matter cannot be considered reliable …. [T]he fact that [Coleman] and his parole agent had not personally met for a compliance check of his residence does not, in combination with the unreliable tip, rise to the level of reasonable suspicion to search that home. Parole agents did not have specific and articulable facts that [Coleman] was engaged in criminal activity. Accordingly, the warrantless entry into Appellant's apartment violated his Fourth Amendment and Article I, § 8 rights.

**Id.**

Instantly, at the suppression hearing, Officer Lawrence testified with respect to reports from members of the public concerning drug trafficking near Appellant's residence:

> Specifically, there's a bus stop [on the 200 block of Ormsby Avenue] and mothers and[] fathers were complaining that … individuals [] were possibly under the influence of narcotics[, and] purchasing narcotics in that area.

N.T., 6/29/23, at 5. Officer Lawrence further testified, "My chief contacted me and told me specifically he received a complaint in regards to [the residence]." **Id.** On an unspecified date in July of 2022, Agent Graulty went

- 12 -

to the Mount Oliver police station to show officers "a book of everyone who is on parole" in the area. *Id.* at 6. Officer Lawrence testified he advised Agent Graulty that his department had "received tips from parents[,] and my chief gave me a tip in regards to [the residence,] specifically." *Id.* at 7.

In the days following his communication with Agent Graulty, Officer Lawrence drove past Appellant's residence. *See id.* On one occasion, Officer Lawrence observed Appellant exit his residence with a "trash bag" in hand and walk to a local bar, where "[h]e placed the trash there and then walked back down to this residence." *Id.* Based on his training and experience, Officer Lawrence suspected Appellant was attempting to "hide something, possibly whatever is in that trash. He doesn't want anyone to see what's in it." *Id.* at 8. Officer Lawrence relayed this information to Agent Graulty. *See id.*

Agent Graulty testified that when he went to the Mount Oliver police station, officers advised him "there were anonymous tips coming in about suspicious activities, specifically drug activities, surrounding" Appellant's address. *Id.* at 22. Based on this information, Agent Graulty conducted surveillance on Appellant's residence on July 6, 2022. *Id.* Agent Graulty described what he next observed:

> I sat in the vehicle in front of the residence for a period of time until I noticed a maroon SUV that was parked [more than a block away] from [Appellant's residence]. [An o]ccupant got out of the vehicle, went into the residence, was inside the residence for a very brief amount of time and went back into [the maroon SUV]. It should be noted there is plenty of parking in front of that residence.

- 13 -

*Id.* at 22-23. Agent Graulty did not state whom he believed the occupant of the vehicle to be. *See id.* However, in response to the prosecutor's question, "When did you see [Appellant] again after July 6th[,]" Agent Graulty responded, "July 7th." *Id.* at 23.

Agent Graulty explained Appellant arrived at the parole office on July 7, 2022, for "regular reporting." *Id.* Agent Graulty described Appellant's unusual behavior that day:

> So when he left our office after his visit on that day[,] I observed him walk, again, a block down or half a block down our street, a block down the other way and a half a block up on the next street over and enter [the maroon SUV].

*Id.* Agent Graulty testified he believed Appellant was employing "a typical counter-surveillance technique that guys use whenever they come to our office under the idea that if they park in our lot their vehicle might get searched." *Id.* at 24. Agent Graulty further testified that the information Officer Lawrence related to him, *i.e.*, Appellant "taking his trash out of his residence and placing it in front of a different residence[,]" appeared to be an effort to "avoid … a trash pull." *Id.* at 25. On cross-examination, Agent Graulty testified that the above observations, "[i]n conjunction with [Appellant's] criminal history," informed his decision to conduct a search of Appellant's residence. *Id.* at 37.

In its Rule 1925 opinion, the trial court relied on its findings and legal conclusions resolving Appellant's suppression motion, announced in court prior to Appellant's non-jury trial:

> The [c]ourt notes that[,] as a matter of law[,] the right to be free from unlawful searches and seizures is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article [I], Section 8, of the Pennsylvania Constitution. It is well settled that the Fourth Amendment of the U.S. Constitution and Article [I], Section 8 of the Pennsylvania Constitution provides limited protection to parolees. Parole agents are not required to obtain a warrant based upon probable cause before conducting a search of a parolee[,] as any search will be deemed reasonable and the results of the search admissible if the parole agent possessed both reasonable suspicion that a parole violation has been committed and the search was reasonably related to the parole agent's duty. Parole agents may also base reasonable suspicion of drug activity on information provided by a reliable third party or first-hand observations.
>
> The [c]ourt finds unequivocally that reasonable suspicion existed for the search of [Appellant's] home. The [c]ourt finds the tips provided to the police were reliable based on their investigation. Further, the subsequent investigation by [Agent Graulty] clearly evidenced the likelihood of a parole violation. As such, the resulting search was reasonably related to the agent's duty and was proper.

Trial Court Opinion, 2/7/24, at 13 (quoting N.T., 8/3/23, at 4-5).

Upon review, and considering the totality of the circumstances, we conclude the trial court's findings are supported by the evidence and its legal conclusions are sound. The record confirms that Agent Graulty independently corroborated the anonymous tips conveyed to him by Officer Lawrence.

Unlike the cases relied upon by Appellant, wherein law enforcement wholly failed to investigate anonymous reports alleging criminal activity, Agent Graulty set forth specific, articulable facts corroborating the anonymous tips reporting Appellant's involvement in drug activity. Agent Graulty was not required to observe outright illegal conduct in order to formulate reasonable

suspicion of a parole violation. *See Commonwealth v. Altadonna*, 817 A.2d 1152 (Pa. Super. 2003) ("The fact that [a]ppellant's [actions] may have been consistent with innocent behavior does not, standing alone, make the detention and limited investigation illegal." (citation omitted)).

In particular, Appellant's depositing trash at a location away from his residence, and parking a distance from his residence and the parole office, led Agent Graulty reasonably to conclude Appellant was employing countermeasures to avoid detection of illegal activity. *See Sperber*, 177 A.3d at 215 (reasonable suspicion must be "considered in light of the totality of the circumstances"). These observations independently corroborated the anonymous tips received by Mount Oliver police. Further, Agent Graulty's consideration of Appellant's prior criminal history was permissible in evaluating the totality of the circumstances. *See* 61 Pa.C.S.A. § 6182(d)(vii).

As Agent Graulty had reasonable suspicion that Appellant was in violation of the terms of his parole, his search of Appellant's residence was lawful. *See Rosendary*, 313 A.3d at 247. Accordingly, Appellant's claim merits no relief.

Judgment of sentence affirmed.

Judge Beck joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 9/24/2024