J-A05005-18

2018 PA Super 201

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN MCCLEARY, | : | |
| | : | |
| Appellee | : | No. 244 EDA 2017 |

Appeal from the Order Entered December 7, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0006625-2016

BEFORE: DUBOW, J., MURRAY, J., and STEVENS, P.J.E.*

OPINION BY DUBOW, J.:                    **FILED JULY 10, 2018**

The Commonwealth appeals from the December 7, 2016 Order entered in the Philadelphia County Court of Common Pleas granting the Motion to Suppress filed by Appellee, John McCleary. After careful review, we conclude that the suppression court erred as a matter of law when it concluded that police officers failed to obtain valid consent to search Appellee's residence because they did not adhere to Philadelphia Police Department Directives. After careful review, we reverse the suppression court's Order and remand for further proceedings consistent with this Opinion.

In its Pa.R.A.P. 1925(a) Opinion, the suppression court detailed the testimony adduced at the suppression hearing. Briefly, on February 12, 2016, Philadelphia Police Officers Lemorus Grover and Keith Baynes responded to Appellee's home at 5725 Florence Avenue after Appellee

_____

* Former Justice specially assigned to the Superior Court.

reported a burglary in progress. Officers Grover and Baynes entered Appellee's home through an open door and observed Appellee, Janis Shavers, and two other officers talking in the living room. Officers Grover and Baynes relieved the other two officers and attempted to clarify and calm the situation.

Appellee claimed that Shavers had been trying to break in to his home and that he had a valid Protection from Abuse Order ("PFA")[1] against her. Shavers claimed that she had a right to be present in the home and she had belongings in a second-floor bedroom that would prove she lived there. The officers did not immediately verify whether Appellee had a valid PFA against Shavers.[2]

When the officers asked Appellee if they could see if Shavers had any belongings in the second-floor bedroom, Appellee responded "Yes" twice. N.T. Motion, 12/7/16, at 21-22. Officer Baynes walked upstairs and entered the second-floor bedroom. In the bedroom, he observed in plain view a scale, a sandwich bag with marijuana, a box of unused drug packaging, eleven bags of crack cocaine, and clear plastic Ziploc bags. Appellee admitted that all the drugs belonged to him. *Id.* at 61-62. The officers arrested Appellee.

---

[1] *See* 23 Pa.C.S. §§ 6101 *et seq.* (Protection from Abuse Act).

[2] At the suppression hearing, the parties stipulated that there was an active PFA filed by Appellee against Shavers. N.T. Motion, 12/7/16, at 79.

The Commonwealth charged Appellee with Possession of a Controlled Substance With Intent to Deliver ("PWID"), Possession of a Controlled Substance, and Possession of Drug Paraphernalia.[3]

Appellee filed a boilerplate Motion to Suppress his statements and the physical evidence recovered from his home. On December 7, 2016, the suppression court heard testimony on the Motion to Suppress consistent with the above facts. At the close of the hearing, the suppression court granted Appellee's Motion to Suppress.

The suppression court focused the bulk of its analysis on the police officers' failure to comply with Philadelphia Police Department Directive 5.7, Sections 12 through 16, which address, *inter alia*, the best practices for obtaining valid consent to search property. In support of its decision to grant Appellee's Motion to Suppress, the court specifically found that the officers acted "in direct contravention to their own police directive" and concluded that "the Commonwealth has failed to prove that the officers followed proper procedures and obtained a valid consent to search [Appellee's] residence." Suppression Court Opinion, 4/26/17, at 6. The suppression court focused on several purported violations of police directives, including: (1) failure to obtain "signed consent;" (2) failure to inform Appellee of his right to refuse consent; (3) failure to consult with a

_____

[3] 35 P.S. § 780-113(a)(30); 35 P.S. § 780-113(a)(16); and 35 P.S. § 780-113(a)(32), respectively.

supervisor; and (4) failure to verify Appellee's PFA and simply arrest Shavers. *Id.* at 6-8.

On January 6, 2017, the Commonwealth filed an interlocutory appeal pursuant to Pa.R.A.P. 311(d).[4] Both the Commonwealth and the suppression court complied with Pa.R.A.P. 1925.

The Commonwealth presents one issue for our review:

> Did the lower court err by suppressing contraband that officers observed in plain view - after entering a room with [Appellee's] express consent - on the ground that they had failed to comply with internal police department procedures?

Commonwealth's Brief at 3.

Our standard of review applicable to suppression determinations is well-settled. "When reviewing the grant of a suppression motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Ennels***, 167 A.3d 716, 718 (Pa. Super. 2017) (citation and quotation marks omitted). "We may only consider evidence presented at the suppression hearing." ***Id.***

"In addition, because the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much

---

[4] Pa.R.A.P. 311(d) provides that "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."

of the Commonwealth's evidence as remains uncontradicted when read in the context of the record as a whole." *Id.* at 718-19 (citation omitted). "We may reverse only if the legal conclusions drawn from the facts are in error." *Id.* at 719.

Importantly, "[o]nce a [M]otion to [S]uppress [E]vidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*) (citation omitted); *see also* Pa.R.Crim.P. 581(H).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). To effectuate these protections, the exclusionary rule bars the use of illegally obtained evidence in state prosecutions in order to deter illegal searches and seizures. *Commonwealth v. Arter*, 151 A.3d 149, 153-54 (Pa. 2016). The United States Supreme Court has held that the exclusionary rule applies where "its remedial objectives are thought most efficaciously served" and "its deterrence benefits outweigh its substantial social costs." *Id.* at 154 (citation omitted).

Pennsylvania courts have rejected the automatic suppression of evidence pursuant to the exclusionary rule where police fail to comply with

specific Rules of Criminal Procedure relating to the issuance and execution of search warrants. *Commonwealth v. Ruey*, 892 A.2d 802, 808 (Pa. 2006) (OAJC). *See also Commonwealth v. Mason*, 490 A.2d 421, 423-25 (Pa. 1985) (rejecting automatic application of exclusionary rule for violation of Rule of Criminal Procedure governing search warrants, and collecting cases).

This Court has similarly refused to apply the exclusionary rule for every violation of statutes governing police authority and conduct during investigations, searches, and seizures. *See*, *e.g.*, *Commonwealth v. Hilliar*, 943 A.2d 984, 989-92 (Pa. Super. 2008) (holding that violation of Municipal Police Jurisdiction Act did not require suppression of evidence from stop); *Commonwealth v. DeGeorge*, 466 A.2d 140, 141 (Pa. Super. 1983) (holding that violation of Rule of Criminal Procedure governing inventory of item seized did not require suppression of evidence), *reversed on other grounds by* *Commonwealth v. DeGeorge*, 485 A.2d 1089 (Pa. 1984). This Court's research has not located any cases addressing the application of the exclusionary rule as a remedy for the violation of internal police procedures, administrative protocols, or similar policies.

"In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." *Ennels*, 167 A.3d. at 723 (citation omitted). Our Supreme

Court has articulated the following non-exhaustive list of factors to be used in assessing the totality of circumstances: "1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location and time of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, thus suggesting to a citizen that his movements may remain subject to police restraint; and 9) whether there was an express admonition to the effect that the citizen-subject is free to depart, which is a potent, objective factor." *Commonwealth v. Randolph*, 151 A.3d 170, 177 (Pa. Super. 2016) (citations and quotation marks omitted).

Where a defendant summons police or emergency personnel regarding potential criminal activity in his home, he has impliedly consented to police entry and a search of the premises that is reasonably related to an investigation of the alleged crime. *See*, *e.g.*, *Commonwealth v. Witman*, 750 A.2d 327, 335 (Pa. Super. 2000) (holding valid implicit consent for police to enter home where defendant placed 911 call).

In its Rule 1925(a) Opinion, the suppression court opined as follows:

Here, the Commonwealth has failed to prove that the officers followed proper procedures and obtained a valid consent to

search [Appellee's] residence. Although the police were legitimately at [Appellee's] residence in response to a radio call for a burglary in progress, once they determined that it was actually a domestic situation, and were told that [Appellee] had a PFA against [Shavers], they failed to verify if there was an active PFA and instead decided to conduct a search of [Appellee's] residence in direct contravention to their own police directive. *See* attached Philadelphia Police Department Directive 5.7 section 12 through 16. Officer Baynes conceded that had they verified the PFA, they would have arrested [Shavers] and left the residence without incident.

\* \* \*

Because the officers were informed that [Appellee] had a PFA against [Shavers], they should have followed established police procedures and verif[ied] the PFA. If that had been done, the alleged need to search for [Shavers'] clothing would have been eradicated. In this Commonwealth, every holder of a PFA, regardless of gender, should be able to have confidence that the police will verify the validity of the PFA before they create reasons to conduct a warrantless search. While the law of search and seizure is constantly evolving, its focus remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime. Here, there was no acceptable reason to conduct a search, however limited in nature, of [Appellee's] residence.

Suppression Court Opinion, 4/26/17, at 7-8 (some citations omitted).

As noted above, the exclusionary rule is an extreme remedy for distinct constitutional violations. Here, the totality of the circumstances indicates there was no violation of Appellee's Fourth Amendment right. Because Appellee summoned the police by calling 911 to report the alleged burglary in progress, Appellee impliedly consented to police entry and the subsequent limited search, which was reasonably related to their

investigation of the alleged burglary and domestic dispute. *Witman*, 750 A.2d 335.

Moreover, Appellee verbally consented to the police entry and limited search of the bedroom. Appellee responded "Yes" twice when the officers asked him if they could search the bedroom for Shavers' clothing. There is no evidence of record showing that police obtained Appellee's consent by coercion, deceit, or misrepresentation. In light of these factors, we do not agree that the search was improper.

Further, the suppression court cited no relevant authority to support its proposition that application of the exclusionary rule is the appropriate remedy for violating a police directive. *See* Suppression Court Opinion at 6-8. As demonstrated by the legal principles recited above, even where police fail to comply with specific Rules of Criminal Procedure relating to the issuance and execution of search warrants or violate statutes governing police authority and conduct during investigations, searches, and seizures, the exclusionary rule is not necessarily the appropriate remedy, particularly where an individual's Fourth Amendment rights have not been violated. By focusing its analysis exclusively on the police directive, the suppression court ultimately neglected to evaluate the totality of the circumstances and failed to apply relevant and dispositive case law.

Order reversed. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

President Judge Emeritus Stevens joins the Opinion.

Judge Murray files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/10/18