J-A03032-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2092 MDA 2018 |
| AMY ELIZABETH MORGRET | | |

Appeal from the Order Entered December 3, 2018
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000631-2018

BEFORE: LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.: **FILED MARCH 13, 2020**

The Commonwealth appeals from the December 3, 2018 Order entered in the Court of Common Pleas of Lycoming County, granting Appellee Amy Elizabeth Morgret's Motion to Suppress. After careful review, we affirm.

We glean the following facts from the certified record. On June 30, 2016, Appellee was released on parole. As a condition of her release, Appellee was prohibited from directly or indirectly having contact or associating with persons who "sell or use drugs, outside a treatment setting or possess drug paraphernalia." N.T. Hearing, 9/20/18, at 7. Parole Agent Josh Kriger supervised Appellee.

Quran Geddy,[1] with whom Appellee's daughter had an intimate relationship, was also on parole and supervised by Agent Jason Lamay. On October 25, 2017, Agent Lamay was waiting for a search warrant outside Mr. Geddy's residence when Appellee and her daughter walked up to Mr. Geddy's home. When Agent Lamay asked why they were there, Appellee informed Agent Lamay that her daughter believed she had been impregnated by Mr. Geddy.

After Agent Lamay obtained the search warrant for Mr. Geddy's residence, he discovered drug paraphernalia in the home. The Commonwealth arrested Mr. Geddy for possession of drug paraphernalia and detained him in the Lycoming County jail.

After Mr. Geddy's arrest, Agent Lamay discussed with and received approval from his supervisor to search Appellee's residence. On October 27, 2017, Agent Lamay and two other parole agents[2] arrived at Appellee's residence and informed Appellee that they were conducting a parole search. However, they actually searched the residence to "look[] for any kind of

_____

[1] Quran Geddy is referred to as "Quran Getty" in Appellee's Omnibus Pre-trial Motion, "Caran Getty" in the Opinion related to the Motion, and "Coron Getty" in the Pre-Trial Motion hearing transcript. The trial court noted in its 1925(a) Opinion that it believes that the correct spelling of the individual's name is "Quran Geddy."

[2] Appellee's parole agent, Agent Kriger was not involved in the search and the record contains no indication that he was aware of Agent Lamay's search at any time. *See* N.T. Hearing, 9/20/18, at 4-9 (Agent Kriger testifying about the conditions of Appellee's parole, including her written consent to warrantless searches of her residence and the prohibition of her having direct or indirect contact with illicit drug sellers and drug paraphernalia).

contraband in relation to Mr. Ge[dd]y, whether it be drugs, paraphernalia." N.T. Hearing, 9/20/18, at 16. During the search, the agents found two unlabeled pill bottles containing unknown pills and a generic acetaminophen bottle with an unknown powdery substance in Appellee's bedroom nightstand drawer. They also saw a digital scale in the living room. The agents then stopped their search and Agent Lamay contacted the Williamsport Bureau of Police. A parole agent transported Appellee to the parole office.

Police Officer Jason Bell arrived at Appellee's apartment and the parole agents showed him the items they had found. Officer Bell then drove to the parole office to speak with Appellee and obtained her consent to conduct a search of her residence. Officer Bell proceeded to conduct the search, during which he discovered additional drugs in Appellee's bedroom.[3] Officer Bell also found a black purse in Appellee's bedroom containing multiple individual bundles of ten-and twenty-dollar bills, which together totaled $7,120.

The Commonwealth subsequently charged Appellee with six counts of Possession with Intent to Deliver Controlled Substances and six counts of Possession of a Controlled Substance.

Appellee filed an Omnibus Pre-Trial Motion, which included a Motion to Suppress. In the Motion to Suppress, Appellee contended that the parole

---

[3] The drugs and pills found by the parole agents and Officer Bell were later determined to be Tramadol, Alprazolam, Methylfentanyl, Buprenorphine and Oxycodone.

agents' October 27, 2017 entry into her home was a ruse and illegal, and thus, the warrantless search was improper.

The court held a pre-trial motion hearing on September 20, 2018, in which Agents Kriger and Lamay and Officer Bell, among others, testified.

On December 3, 2018, the trial court entered an Opinion and Order, granting Appellee's Suppression Motion. The court concluded that the Commonwealth's proffered reasons for the search were not supported by reasonable suspicion because "the only evidence was that Appellee's daughter was associating with Ge[dd]y," and "[c]onducting a warrantless search of [Appellee's] home to determine if Ge[dd]y left controlled substances or paraphernalia was not a sufficient reason established by reasonable suspicion." Op. and Order, dated 12/3/18, at 9-10.

The Commonwealth filed a timely interlocutory appeal pursuant to Pa.R.A.P. 311(d).[4] Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth presents two issues for our review:

> I. Did the court err in finding that the search of [Appellee's] residence by Parole Agents was illegal, as said search as conducted without reasonable suspicion, when that issue was not raised in [Appellee's] Motion to Suppress nor raised in either an oral or written amendment?

---

[4] Pa.R.A.P. 311(d) provides that "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."

II. Did the court err in granting [Appellee's] Motion to Suppress by finding that the search conducted by Parole Agents was without reasonable suspicion?

Appellant's Br. at 4.

In its first issue, the Commonwealth asserts that Appellee did not properly raise the issue of "reasonable suspicion" in her Motion to Suppress and, therefore, waived the issue. *Id.* at 10. We disagree.

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). A parolee, however, has fewer constitutional search and seizure protections than a regular citizen. *Commonwealth v. Coleman*, 130 A.3d 38, 42 (Pa. Super. 2015); *Commonwealth v. Moore*, 805 A.2d 616, 620 (Pa. Super. 2002). "In exchange for early release from prison, [a] parolee cedes away certain constitutional protections[.]" *Commonwealth v. Sperber*, 177 A.3d 212, 215 (Pa. Super. 2017) (citation omitted). Nonetheless, a parolee still has "limited constitutional protections" related to warrantless searches. *Coleman*, 130 A.3d at 42. Parole officers may perform a warrantless search of a parolee's residence only if there is a reasonable suspicion to believe that evidence of contraband or a violation of parole will be discovered. *Id.*; 61 Pa.C.S. § 6153(d)(1).

To effectuate these constitutional protections, the exclusionary rule bars the use of illegally obtained evidence in state prosecutions in order to deter illegal searches and seizures. *Commonwealth v. Arter*, 151 A.3d 149, 153-

54 (Pa. 2016). Prior to trial, a defendant may file a motion "to suppress any evidence alleged to have been obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(A); *see Commonwealth v. Long*, 753 A.2d 272, 279 (Pa. Super. 2000). "The motion shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D).

Here, although Appellee did not specifically use the term "reasonable suspicion" in her Motion to Suppress, we nevertheless conclude that the Motion "specifically and with particularity [stated] the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). In the Motion, Appellee asserted that "[t]he physical evidence, [the] money and alleged drugs . . . obtained from [Appellee] and her residence[,]was the product [of] and tainted by [the parole agents'] illegal entry into [her] home." Motion to Suppress, 7/28/28, ¶ 20. She described the parole agents' search of her residence as "a ruse and illegal and improper[,]" noting that the Commonwealth did not obtain a search warrant or valid consent. *Id.* at ¶¶ 21, 22. Thus, contrary to the Commonwealth's contention, Appellee did assert in her Suppression Motion that the search violated her rights under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, and thus, did not waive the challenge to the search. *Id.* at ¶ 23. Accordingly, this issue has no merit.

In its second issue, the Commonwealth asserts that Agent Lamay had reasonable suspicion to conduct the search of Appellee's residence. Appellant's Br. at 14. Therefore, the court should have denied Appellee's Motion to Suppress. *See id.*

"When reviewing the grant of a suppression motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. McCleary**, 193 A.3d 387, 390 (Pa. Super. 2018) (citation omitted). "We may only consider evidence presented at the suppression hearing." **Id.** (citation omitted). "[B]ecause the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the suppression record as a whole. **Id.** (citation omitted).

We are highly deferential to the suppression court's factual findings and credibility determination. **Commonwealth v. Batista**, 219 A.3d 1199, 1206 (Pa. Super. 2019). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." **Commonwealth v. Elmobdy**, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted). If the record supports the suppression court's findings, we may not substitute our own findings. **Bastista**, **supra** at 1206. However, we give no deference to the suppression court's legal conclusions and review them *de novo*. **Id.**

As discussed above, pursuant to U.S. and Pennsylvania Constitutions, "[p]arole officers may perform a [warrantless] search of a parolee's residence only where the totality of the circumstances demonstrates reasonable suspicion that evidence of contraband or a violation of parole will be discovered." **Coleman**, **supra** at 42 (citing 61 Pa.C.S. § 6153). The following factors may be taken into account when determining the existence of reasonable suspicion: (i) the observations of agents; (ii) information provided by others; (iii) the activities of the offender; (iv) information provided by the offender; (v) the experience of agents with the offender; (vi) the experience of agents in similar circumstances; (vii) the prior criminal and supervisory history of the offender; and (viii) the need to verify compliance with the conditions of supervision. 61 Pa.C.S. § 6153(d)(6).

The Commonwealth asserts that Agent Lamay possessed reasonable suspicion that Appellee had violated the condition of her parole—the prohibition against having contact or associating with persons who sell or use drugs—because (1) he had been informed that Mr. Geddy was known to leave drugs in his girlfriends' homes; (2) on October 25, 2017, he had seen Appellee and her daughter arriving at Mr. Geddy's home to speak with him about her daughter's pregnancy; and (3) on that same date, Mr. Geddy was arrested for drug related matters. Appellant's Br. at 15.

The suppression court concluded that the Commonwealth failed to demonstrate that the parole agents had a reasonable suspicion that the warrantless search would lead to evidence of Mr. Geddy's controlled

substances or drug paraphernalia or a violation Appellee's parole. Trial Ct. 1925(a) Op., dated 6/12/19, at 2; Op. and Order at 9-11. The court determined that the parole agents did not, in fact, believe that Appellee violated her parole because Agent Lamay explicitly stated that he went to Appellee's residence to "specifically look[ ] for any kind of contraband in relation to Mr. [Geddy], whether it be drugs [or] paraphernalia[,]" not for evidence in relation to any parole violation committed by Appellee. Trial Ct. 1925(a) Op. at 3 (quoting N.T. Hearing at 16). The court found that the search was based on a "bald assertion" that Mr. Geddy was known to leave controlled substances or paraphernalia in the homes of his girlfriends—noting that the Commonwealth did not present any evidence to support this assertion, *i.e.*, how the agent knew that Mr. Geddy left drugs in his girlfriends' homes, the reliability of the information, and the staleness of this information. Op. and Order at 10.

Review of the record supports the suppression court's conclusion that the totality of the circumstances demonstrated that parole agents did not have a reasonable suspicion that evidence of contraband or a violation of parole would be discovered at Appellee's residence. **Coleman**, 130 A.3d at 42. The sole purpose of the search was to look for contraband related to Mr. Geddy. Additionally, the record shows that the Commonwealth failed to establish a connection between Mr. Geddy's alleged drug activity and Appellee.

Accordingly, we conclude that the suppression court's factual findings are supported by the record and discern no error in its grant of Appellee's Motion to Suppress.[5]

Order affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/13/2020

---

[5] We note that while Officer Bell obtained verbal consent from Appellee to conduct a search of her residence, this consent was the product of the parole agents' unconstitutional initial search of her residence. Therefore, the consent was invalid and the trial court properly suppressed the evidence from the search conducted by the parole agents and the search conducted by Officer Bell. **See Commonwealth v. Freeman**, 757 A.2d 903, 909 (Pa. 2000) (concluding that the defendant's consent was invalid and the fruits of the search must be suppressed because the initial detention which led to the consent was illegal).