J-S02019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW JAMES MCKEON | : | No. 1865 EDA 2024 |

Appeal from the Order Entered June 26, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0000450-2024

BEFORE: LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY DUBOW, J.: **FILED FEBRUARY 27, 2025**

The Commonwealth of Pennsylvania appeals from the June 26, 2024 order entered in the Bucks County Court of Common Pleas granting the motion to suppress evidence filed by Appellee, Matthew James McKeon. After careful review, we reverse.

The relevant facts and procedural history are as follows. In the early morning hours of October 14, 2023, Pennsylvania State Trooper George Krukowski and his partner Trooper Thomas Kirk were on patrol in the area of Ridge Road, West Rockhill Township, Bucks County. The troopers were in full uniform and operating a marked patrol car.

Ridge Road is a flat, two lane, curvy roadway with a yellow center line dividing the opposing lanes of traffic and white fog lines marking the roadway's shoulders. The center dividing line has rumble strips installed within it.

At 12:45 AM that morning, Trooper Krukowski observed a pick-up truck-later identified as being driven by Appellee-pass him while travelling south on Ridge Road, prompting the trooper to turn from Old Bethlehem Road onto Ridge Road behind the truck. He initially observed the truck drift toward, and then hit, the fog line. After Trooper Krukowski then noticed the truck hit the center line of the roadway while turning, Trooper Krukowski activated the mobile video recorder ("MVR") equipped on his patrol vehicle.

While continuing to follow the truck, Trooper Krukowski then observed the truck drift over the fog line again, then drift back to and touch the center line as it attempted to negotiate a turn in the road. Then the truck came to an intersection controlled by a traffic light which, as the truck approached, indicated red towards the truck's lane of travel. Rather than stop at the stop line before the intersection, the truck crossed over the line until its back tires were resting on it.

After the light turned green, the truck continued on Ridge Road, drifting first toward, and then striking, the fog line, and then driving back toward the centerline and striking, but not crossing, it.[1] After following Appellee for approximately 2 miles over a period of 5 minutes, and watching the truck

_____

[1] Trooper Krukowski attributed the fact that the truck did not cross the center line to the presence of the rumble strips which, in his experience, correct drivers back toward the center of their lane of traffic when they make contact with them. N.T. Suppression Hr'g, 6/26/24, at 28. Trooper Krukowski also explained that, in his experience, when no rumble strips are present drivers who drift toward the center line often cross over into the other lane of travel. *Id.*

swerve numerous times, hit the fog or center line 5 or 6 times, and fail to properly stop for the red light, Trooper Krukowski activated his overhead lights and initiated a traffic stop believing that Appellee was under the influence of alcohol or a controlled substance.

Appellee was slow to respond to Trooper Krukowski's emergency lights, but eventually pulled his truck over around a curve in the road. Trooper Krukowski approached Appellee from the driver's side, and while informing Appellee of his observations of Appellee's driving, he detected a strong odor of alcohol.[2]

Following this incident, the Commonwealth charged Appellee with six counts of Driving Under the Influence offenses, Possession of Drug Paraphernalia, and the summary traffic offenses of Careless Driving and Disregarding Traffic Lanes.[3]

On May 12, 2024, Appellee filed a motion to suppress the traffic stop asserting that Trooper Krukowski lacked the requisite reasonable suspicion or probable cause to initiate a traffic stop because Appellee's "momentary touches" of the center and fog lines did not create a reasonable safety concern

---

[2] Upon his subsequent search of Appellant's vehicle, Trooper Krukowski found drug paraphernalia.

[3] **See** 75 Pa.C.S §§ 3802(a)(1), 3802(b), 3802(d)(1)(i), 3802(d)(1)(ii), 3802(d)(2), 3802(d)(3); 35 P.S. § 780-113(a)(32); 75 Pa.C.S. §§ 3714(a), and 3309(1).

or require any vehicles or pedestrians to take evasive action.[4]  Appellee also argued that his ability to stop at the red light-controlled intersection and to properly use his high beams undermined the Commonwealth's position that the officer's traffic stop was reasonable.

On June 26, 2024, the suppression court held a hearing on the motion at which Trooper Krukowski testified in accordance with the above facts. Trooper Krukowski also testified regarding his training and approximately 8 years of experience in identifying impaired drivers and conducting hundreds of traffic stops.  He also testified that, in his experience, a driver's failure to stop at a stop line before an intersection and a delay in responding to emergency lights are often indicative of someone who is driving impaired.  On cross-examination, Trooper Krukowski conceded that he did not mention anything about driving under the influence in the affidavit of probable cause, which is simply a summary of events, but instead focused on Appellee's driving behavior.  In addition to the testimonial evidence presented by the Commonwealth, the court viewed Trooper Krukowski's MVR recording with contemporaneous narration from the incident.

Following the hearing, the suppression court granted Appellee's motion to suppress finding that Appellee's "slight technical violations of the law" were insufficient to provide Trooper Kurkowski with probable cause to effectuate a

_____

[4] The MVR recording indicates that two vehicles passed Appellee in the opposite lane of travel without incident during the period recorded.

traffic stop based on a violation of the Motor Vehicle Code. N.T. Suppression Hr'g, 6/26/24, at 29, 31.

This appeal followed. Both the Commonwealth and the suppression court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue on appeal:

Did the suppression court err in finding Trooper Krukowski did not have at least reasonable suspicion, based upon the totality of the circumstances, to conduct a traffic stop on [Appellee's] vehicle where, at approximately 12:45 [AM], the [t]rooper observed multiple instances of swerving as well as [Appellee's] failure to stop at a clearly marked stop line when faced with a red light[?]

Commonwealth's Brief at 4.

***

"When reviewing the grant of a suppression motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. McCleary***, 193 A.3d 387, 390 (Pa. Super. 2018) (citation omitted). "We may only consider evidence presented at the suppression hearing." ***Id.*** (citation omitted). "[B]ecause the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the suppression record as a whole." ***Id.*** (citation omitted).

We are highly deferential to the suppression court's factual findings and credibility determinations. ***Commonwealth v. Batista***, 219 A.3d 1199, 1206 (Pa. Super. 2019). "It is within the suppression court's sole province as

- 5 -

factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." **Commonwealth v. Elmobdy**, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted). "[I]f the record supports the suppression court's findings, we may not substitute our own findings." **Batista**, 219 A.3d at 1206 (citation omitted). However, we "give no deference to the suppression court's legal conclusions" and review them *de novo*. **Id.** (citation omitted).

The Commonwealth asserts that the suppression court applied the wrong legal standard when determining whether the traffic stop initiated by Trooper Krukowski was legal. In particular, the Commonwealth claims that, even though the court stated its objective was to determine whether Trooper Krukowski had reasonable suspicion to effectuate the traffic stop to investigate a possible DUI, the court actually applied the probable cause standard when it "analyzed each discrete driving action asking if it amounted to a violation of the vehicle code by itself," to conclude that Trooper Krukowski lacked probable cause to stop Appellee for an observed violation of the Motor Vehicle Code. Commonwealth's Brief at 10, 16-18. The Commonwealth contends that, when viewing Trooper Krukowski's observations in their totality and through the lens of his training and experience, Trooper Krukowski had an articulable basis for concluding that Appellee was operating his vehicle under the influence in violation of the Motor Vehicle Code. **Id.** at 9. The Commonwealth further argues that this articulable basis provided the trooper with reasonable

suspicion that criminal activity was afoot and his need to investigate further whether Appellee was operating his vehicle under the influence justified the traffic stop. *Id.*

The Commonwealth also contends that, to the extent that the suppression court analyzed Trooper Krukowski's testimony to determine whether he had reasonable suspicion to conduct a traffic stop, the court erred as a matter of law when it substituted its own judgment for that of Trooper Krukowski. *Id.* at 15-16. In support of this claim, the Commonwealth highlights the suppression court's statement on the record that "if I just watch that video and you said to me, without commentary or anything, how was the driving? I would have said it seems normal." *Id.* (citing N.T. at 28).

\*\*\*

Here, the record reflects, and the trial court found, that Trooper Krukowski initiated a traffic stop based on his suspicions that Appellee was operating his vehicle while under the influence of drugs or alcohol. N.T. at 15, 29-30; Suppression Ct. Op, 9/6/24, at 3. This Court has explained that:

> if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

***Commonwealth v. Salter***, 121 A.3d 987, 993 (Pa. Super. 2015).[5]

> Reasonable suspicion is a less stringent standard than the probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, **courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience, and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.**

***Commonwealth v. Walls***, 206 A.3d 537, 541-42 (Pa. Super. 2019) (citation omitted; emphasis added). The reasonable suspicion inquiry "is an objective one, which must be considered in light of the totality of the circumstances." ***Commonwealth v. Holmes***, 14 A.3d 89, 96 (Pa. 2011). In making this assessment, the court must ask "whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot." ***Id.***

After acknowledging that in order for the traffic stop to be legal, Trooper Krukowski needed reasonable suspicion that Appellee was operating his vehicle under the influence of drugs or alcohol, the suppression court

---

[5] This differs from situations in which an officer observes a violation of the Motor Vehicle Code and no further investigation to determine that the violation occurred is necessary. In those situations, an officer must have probable cause to initiate the traffic stop. ***Commonwealth v. Cephus***, 208 A.3d 1096, 1099 (Pa. Super. 2019); ***see also Commonwealth v. Ibrahim***, 127 A.3d 819, 823 (Pa. Super. 2015) (explaining that "[i]f it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle").

explained that it granted Appellee's suppression motion because "after watching the [MVR recording, the court] did not believe that Trooper Krukowski possessed reasonable suspicion that Appellee was driving in an impaired fashion." Suppression Ct. Op. at 7 (internal quotation marks omitted). The court found that "drivers touch the fog lines and rumble strips all the time[]" and "the video depicted normal driving." *Id.* (internal quotation marks omitted). Then, based on its consideration of cases analyzing traffic stops arising from obvious violations of the Motor Vehicle Code, the suppression court concluded that it was not clear that Appellee violated either Section 3309(1) or Section 3112(a)(3)(i).[6] *Id.* at 8.

Following our review, we find that the suppression court's findings of fact are supported by the record, but its conclusions of law, as set forth above, are in error. First, both the notes of testimony from the suppression hearing and the suppression court's opinion reflect that, despite the court's acknowledgement that its mandate was to consider whether Trooper Krukowski had reasonable suspicion to conduct the traffic stop, its analysis instead focused on whether Trooper Krukowski had probable cause to believe that Appellee had committed an obvious violation of the Motor Vehicle Code.

Further, to the extent that the court did consider Trooper Krukowski's reasonable suspicion that Appellee was engaged in criminal activity, *i.e.*,

---

[6] Section 3112(a)(3)(i) directs that a vehicle facing a steady red signal shall stop at a clearly marked stop line. 75 Pa.C.S. § 3112(a)(3)(i). The Commonwealth did not charge Appellee with this offense.

driving while intoxicated, the court failed to defer to the reasonable inferences Trooper Krukowski drew from his observations of the totality of Appellee's conduct. Those facts—derived from the Commonwealth's **uncontradicted** video evidence—include Appellee weaving back and forth within his lane of travel five or six times during a short period of time, striking both the center line and the fog lines while doing so, and failing to stop at the stop line before an intersection controlled by a red light. Accordingly, we conclude that the suppression court erred as a matter of law in disregarding Trooper Krukowski's training and experience, in failing to defer to the reasonable inferences he drew from his observations, and in concluding that Trooper Krukowski lacked reasonable suspicion to effectuate a traffic stop. We, thus, reverse, the order granting Appellee's motion to suppress.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2025

- 10 -